# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| GORDON MILLER, | : |
| | : |
| Plaintiff, | : Civil Action File No.: |
| | : |
| v. | : |
| | : **JURY TRIAL DEMANDED** |
| INVENTRUST PROPERTIES CORP., | : |
| | : |
| Defendant. | : |

## COMPLAINT

COMES NOW Plaintiff, Gordon Miller, by and through undersigned counsel, and hereby files his Complaint, showing the Court as follows:

### Parties

1. Plaintiff Gordon Miller ("Plaintiff" or "Mr. Miller") is 66 years old and, at all times relevant to this case, was a resident of Georgia.

2. Defendant InvenTrust Properties Corp. ("Defendant" or "InvenTrust") is a foreign profit corporation with its principal office at 3025 Highland Parkway, Suite 350, Downers Grove, IL 60515, and at all times relevant to this case, has conducted business in Fulton County, Georgia. Defendant can be served through its registered agent for service of process, C T Corporation System, 289 S. Culver St., Lawrenceville, GA 30046.

1

3. Defendant is qualified and licensed to do business in Georgia, and at all times relevant hereto, has conducted business within this District.

## Jurisdiction and Venue

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over all Counts of this Complaint, which arises out of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.* ("ADEA"). Plaintiff asserts claims of age discrimination under the ADEA. Plaintiff seeks injunctive and declaratory relief, back pay and lost benefits, front pay or reinstatement to a full-time position with commensurate benefits, liquidated damages, and attorneys' fees and costs of litigation.

5. Venue is proper in this Court because the unlawful employment practices described herein occurred within the Atlanta Division of the Northern District of Georgia.

6. On September 9, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") naming Defendant as the respondent.

7. On August 3, 2022, the EEOC issued Plaintiff a notice of right to sue.

## Statement of Facts

*Plaintiff's Background and Employment at InvenTrust*

8. Defendant InvenTrust is a real estate investment trust that invests in open air shopping centers around the United States.

9. Plaintiff has 38 years of experience in the commercial leasing field.

10. Plaintiff has a four-year Bachelor's degree in Business Management.

11. Plaintiff began employment with Defendant in May of 2016 as a Leasing Director of the Southeast Region.

12. Plaintiff initially worked under the guidance of Lance Billingsley, Senior Vice President-Leasing. When Billingsley resigned in October of 2018, Plaintiff began reporting to Ivy Greaner, Chief Operating Officer.

13. In May of 2020, Matt Hendy was hired as Senior Vice President-Operations.

14. Plaintiff reported jointly to Hendy and Greaner from May of 2020 until October of 2020, when Greaner resigned.

15. Plaintiff reported to Hendy from October of 2020 until his unlawful termination on April 14, 2021.

16. Under the supervision of Billingsley and Greaner, Plaintiff received stellar performance reviews and was never reprimanded. This pattern continued under Hendy's supervision as Plaintiff's region led the company in performance for three years including the first quarter of 2021.

17. Plaintiff earned approximately $630,000 in average yearly commissions from 2018 to 2020 and, through the date of his termination, was on pace for a similar or greater year in commissions for 2021.

18. Throughout his employment with InvenTrust, the leasing representatives who directly reported to Plaintiff routinely exceeded their threshold leasing expectations.

*Hendy's Discriminatory Animus and Termination of Plaintiff*

19. Shortly after Hendy's arrival, he expressed to InvenTrust's upper management that he was interested in replacing Plaintiff.

20. Upon information and belief, Hendy intended to replace Plaintiff with Matt Hagan who is 23 years younger than Plaintiff and far less experienced.

21. On April 14, 2021, Plaintiff was waiting for Hendy to arrive at an off-site meeting that he believed was scheduled to discuss business-related matters. However, Hendy arrived along with Lauren Suva, the Senior Vice President of Human Resources for InvenTrust.

22. When Hendy and Suva arrived, Hendy told Plaintiff that he was terminated and that April 14, 2021 would be his last day. Either Hendy or Suva handed Plaintiff a letter informing him that he was terminated. The letter stated that Plaintiff's "performance [had] not reached an acceptable level" and alleged that

Plaintiff had been given training and feedback.

23. The letter gave no specific examples of deficient performance and nebulously referenced some discussions that were had on "numerous occasions."

24. The letter indicated that Plaintiff was terminated due to "unsatisfactory performance."

25. The accusations in this letter are false as Plaintiff had consistently exceeded his performance requirements and has never been written up or reprimanded for deficient performance.

26. Prior to engaging an attorney and reaching out to Defendant regarding possible litigation, Plaintiff was never given any explanation of the grounds for his termination beyond the explanation outlined in the April 14, 2021 letter.

27. InvenTrust has a progressive discipline program that involves providing feedback and an opportunity to improve for employees. This program was not implemented for Plaintiff prior to his termination.

28. Shortly after Plaintiff was fired, Hendy hired Hagan to replace Plaintiff.

*Defendant's Post Hoc Pretextual Rationale for Plaintiff's Termination*

29. Following Plaintiff's termination, Defendant has shifted its reasoning for terminating Plaintiff from "unsatisfactory performance" to "substantial performance deficiencies and insubordination." During the EEOC's investigation of

Plaintiff's claims, Defendant articulated six pretextual examples of alleged "performance deficiencies and insubordination:" (1) in November of 2020, being involved in a situation which resulted in a potential tenant threatening litigation, (2) on December 8, 2020, a corrective action issued for Plaintiff's moving of COVID-19 safety signage and use of InvenTrust office space during COVID-19-related lockdown, (3) in February of 2021, failing to obtain a "critical correspondence" with regard to an unspecified tenant, (4) also in February of 2021, being involved in a tenant going directly to the CEO to complain, (5) on March 16, 2021, a call from a tenant who expressed that Plaintiff frequently miscommunicated with the tenant, and (6) in April of 2021, attempting to proceed with a transaction without proper authority to do so.

30.     Of the six examples listed above, Plaintiff was only ever notified of any deficiency related to one during his employment: the issue related to COVID-19 signage and use of office space occurring four-and-a-half-months earlier prior to his termination.

31.     Plaintiff was verbally reprimanded for the infraction related to COVID-19. Plaintiff also issued an apology to the office landlord and personally paid for reparations.

32.     Mr. Hendy indicated to Mr. Miller that he "had [his] back on this" in

regards to the COVID-19 infraction.

33. Prior to his termination, Plaintiff was never notified of any negative implications—whether related to his performance or otherwise—of any of the six examples of alleged deficient performance outlined in paragraph 29 other than the issue related to COVID-19 signage and use of office space.

34. Indeed, those five examples of alleged deficient performance outlined in paragraph 25 were routine matters that Plaintiff handled properly and in the ordinary course of his duties.

35. Regarding the allegation of involvement in a situation which resulted in a potential tenant threatening litigation in November of 2020, Plaintiff handled the negotiations with that potential tenant professionally and the negotiations ended amicably.

36. This potential tenant attempted to secure a commitment for the retail space to open a business that was not in conformance with company and property standards. Plaintiff could not agree to the potential tenant's terms because of several issues including the non-conformity with company and property standards.

37. The potential tenant's threats of litigation were based on meritless allegations. Plaintiff believes that the threats were made to strengthen the potential tenant's negotiating position.

38. Plaintiff immediately reported the threatened litigation to Hendy, and the matter was elevated to senior management for resolution. The matter was resolved without incident, and Plaintiff assisted in the resolution, offering suggestions and recommending a personal, face-to-face meeting with the prospective tenant.

39. A face-to-face meeting occurred with the prospective tenant and InvenTrust's COO, Christy David, and the issue was resolved.

40. Prior to his termination, Plaintiff was never notified that Hendy or any other decisionmaker at InvenTrust considered Plaintiff's actions with respect to the potential tenant threatening litigation to reflect unsatisfactory performance, substantial performance deficiencies, or insubordination.

41. Regarding the allegation of failing to obtain a "critical correspondence" with regard to an unspecified tenant in February of 2021, Defendant has not articulated what letter is referenced.

42. Prior to his termination, Plaintiff was given no indication that Hendy or any other decisionmaker at InvenTrust considered Plaintiff's actions with respect to the alleged "critical correspondence" to reflect unsatisfactory performance, substantial performance deficiencies, or insubordination.

43. Regarding the tenant going directly to the CEO to complain in February

of 2021, this situation involved a tenant wanting to negotiate a rental abatement which InvenTrust did not do.

44. The tenant did not agree with this position and, as a third party, circumvented the normal negotiation process by going directly to the CEO.

45. Plaintiff followed proper protocols in the course of the normal negotiation process, and it was the tenant who bypassed the normal procedure.

46. Prior to his termination, Plaintiff was given no indication that Hendy or any other decisionmaker at InvenTrust considered Plaintiff's actions with respect to this tenant going directly to the CEO to reflect unsatisfactory performance, substantial performance deficiencies, or insubordination.

47. Regarding the alleged call on March 16, 2021 from a tenant who expressed that Plaintiff frequently miscommunicated with the tenant, Defendant has not articulated who this tenant is or the substance of his allegation.

48. Prior to his termination, Plaintiff was given no indication that Hendy or any other decisionmaker at InvenTrust considered Plaintiff's actions with respect to this tenant's allegations of frequent miscommunication to reflect unsatisfactory performance, substantial performance deficiencies, or insubordination.

49. Regarding the alleged attempt to proceed with a transaction without proper authority to do so in April of 2021, defendant has not articulated what

transaction could form the basis of such a claim.

50. Prior to his termination, Plaintiff was given no indication that Hendy or any other decisionmaker at InvenTrust considered Plaintiff's actions with respect to an attempt to proceed with a transaction without proper authority to reflect unsatisfactory performance, substantial performance deficiencies, or insubordination.

51. During the time Plaintiff reported to Hendy, Plaintiff was especially careful to obtain approval from Hendy for any actions he took.

52. InvenTrust implemented a 360 review—an intentional, performance evaluation and correction process—on Hendy to correct issues with his micromanagement style and never-been-wrong attitude.

53. Hendy was terminated shortly after Plaintiff was terminated.

54. Prior to his termination Plaintiff was not the subject of any verbal warning, written warning or performance improvement plan.

### *Plaintiff's Damages*

55. Due to Plaintiff's termination, the only comparable work Plaintiff has been able to find has been a part-time/consulting position. He has earned significantly less in that role that he did at InvenTrust.

56. As a result of Defendant's conduct, Plaintiff's career has been derailed.

He has and continues to suffer lost wages.

57. As a result of Defendant's conduct, Plaintiff has incurred attorneys' fees and expenses.

## COUNT I
## AGE DISCRIMINATION IN VIOLATION OF THE ADEA

58. Plaintiff incorporates by reference paragraphs 1 through 57 of the Complaint.

59. Plaintiff is 66 years old and, at all relevant times, was an employee protected by the ADEA.

60. At the time of his termination, Plaintiff was more than qualified for the position he held based on his education, experience, record of performance, and length of service.

61. InvenTrust hired Hagan, a substantially younger and less experienced employee, to replace Plaintiff.

62. Plaintiff's supervisors, including but not limited to Hendy, harbored a discriminatory animus toward older employees.

63. Hendy, among others, discriminated against Plaintiff in violation of the ADEA by taking adverse actions against him, including but not limited to, terminating his employment.

64. In so doing, Defendant knowingly and intentionally discriminated

against Plaintiff on account of his age.

65. In taking these adverse actions against Plaintiff, Defendant unlawfully and willfully discriminated against him based on her age in violation of the ADEA.

66. Plaintiff is entitled to an award of back pay and benefits, front pay, liquidated damages, injunctive relief, attorneys' fees, and all other appropriate damages, remedies, and other relief available under the ADEA and all federal statutes providing remedies for violations of the ADEA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A. That this Court take jurisdiction of this matter;

B. That process be served;

C. That Plaintiff be awarded a declaratory judgment that Defendant violated the ADEA;

D. That this Court enter a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of the ADEA;

E. That the Court award Plaintiff back pay and all benefits, privileges, and rights previously denied under the ADEA;

F.  That Plaintiff be reinstated to his former position with Defendant at the same pay rate, or in the alternative, front pay to compensate Plaintiff for lost future wages and benefits;

G.  That the Court award Plaintiff liquidated and/or double damages under the ADEA;

H.  That the Court award Plaintiff his costs in this action and reasonable attorneys' fees;

I.  That the Court grant to Plaintiff the right to have a trial by jury on all issues triable to a jury; and

J.  That the Court grant such additional relief as the Court deems proper and just.

Respectfully submitted this 1st day of November, 2022.

BUCKLEY BEAL, LLP

*s/Edward D. Buckley*
Edward D. Buckley
Georgia Bar No. 092750
edbuckley@buckleybeal.com
Joseph Quattlebaum
Georgia Bar No. 319971
jquattlebaum@buckleybeal.com

600 Peachtree Street NE
Suite 3900
Atlanta, Georgia  30308
Telephone:  (404) 781-1100

Facsimile:   (404) 781-1101

*Attorneys for Plaintiff*

## FONT AND POINT CERTIFICATION

The undersigned counsel for Plaintiff certifies that the within and foregoing **COMPLAINT** was prepared using Times New Roman, 14-point font in accordance with LR 5.1(C).